IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNATHAN D. WISHNESKI,

Plaintiff,

v.  No. 12-cv-00540-JCH-CG

DR. JOSE ANDRADE and
LIEUTENANT BUCKALOO,

Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *Defendant "Lieutenant Buckaloo's" Motion for Summary Judgment and Memorandum of Law in Support*, (Doc. 2 at 82-91), *Plaintiff's Answer to Defendant Buckalew's Motion for Summary Judgment*, (Doc. 2 at 105-112), *Defendant "Lieutenant Buckaloo's" Reply in Support of her Motion for Summary Judgment*, (Doc. 8), and *Plaintiff's Answer to Defendant Buckalew's Reply and Plaintiff's Supplement to his Answer*, (Doc. 16).[1] Though Plaintiff refers to Defendant as Lieutenant "Buckaloo" or "Buckalew" in various filings, Defendant informs the Court that her last name is properly spelled "Buckelew." (Doc. 2 at 82).

Plaintiff Johnathan Wishneski claims that Defendant violated his constitutional rights by intentionally denying him access to healthcare while incarcerated at the Lea County

---

[1] Plaintiff did not seek leave of the Court to file a surreply, which is a violation of the local rules of civil procedure. D.N.M.L.R.-Civ. 7.4(b). Nevertheless, cognizant that *pro se* pleadings should be liberally construed, the Court will construe the filing as a motion for leave to file a surreply. A motion for leave to file a surreply should be granted where the moving party presents legal arguments or evidence not proffered in the original motion. *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Because Plaintiff has provided additional exhbits in his surreply, and because Defendant has not objected to Plaintiff's surreply or sought to have it stricken from the record, the Court will grant the motion and consider the surreply.

Correctional Facility ("LCCF"). (*See, generally*, Doc. 1-2 at 1-18). Defendant argues that she had no responsibility or authority to provide Plaintiff with medical care at LCCF and she is therefore entitled to judgment as a matter of law. (Doc. 2 at 82-88). The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I.     Background

Plaintiff is an inmate who is incarcerated at LCCF in Hobbs, New Mexico. (Doc. 1-2 at 1; Doc 2 at 93). Defendant Brittni Buckelew is a corrections office who is employed by The GEO Group ("GEO"), a publicly traded company which operates LCCF pursuant to a contract it signed with Lea County in 1997. (Doc. 2 at 94). Defendant has worked as a correctional officer at LCCF since 2007. (*Id.*).

Plaintiff's complaint arises out of a decision by Dr. Jose Andrade, a physician at LCCF, to discontinue Plaintiff's prescription for morphine. (Doc. 1-2 at 1-3). The events leading up to the cancellation of Plainitf's morphine prescription began on July 25, 2010, when Sgt. Mendoza was conducting a "shakedown" of Plaintiff's cell. (*Id.* at 1, 12). While searching the cell, Sgt. Mendoza found two purple pills inside a clear plastic tube. (*Id.* 1, 11-12). The pills were identified as morphine (MS Contin) which had been prescribed to Plaintiff. (*Id.* at 11, 13). Although Plaintiff does not explain why he was taking morphine, it appears that it had been prescribed by prison doctors to treat a shoulder injury. (*See, e.g.*, *Id.* at 17, 28). Sgt. Mendoza suspected that Plaintiff was hoarding the morphine and charged him with Abuse of Medication, a major level offense. (*Id.* at 11). A nurse left a note for Dr. Andrade, informing him that Plaintiff was hoarding his morphine. (*Id.* at 13). As a

result, Dr. Andrade cancelled Plaintiff's morphine prescription. (*Id.* at 1).

A disciplinary hearing was held on August 9, 2010, and Defendant Buckelew was assigned to be the hearing officer. (*Id.* at 1, 10-11). She determined that the reporting officer had failed to submit a chain of custody form for the incriminating pills and she dismissed the charges against Plaintiff based on this procedural error. (*Id.* at 10). Following the dismissal of the charges, Plaintiff approached the facility medical director about getting his morphine prescription reinstated. (*Id.* at 1). He was told to bring proof of the dismissal to Dr. Andrade and was assured his morphine prescription would be renewed. (*Id.*).

Plaintiff met with Dr. Andrade on September 1, 2010, and he provided proof that the charges had been dismissed. (*Id.* at 2). Plaintiff claims that, instead of reinstating the morphine prescription, Dr. Andrade called Defendant Buckelew while Plaintiff was still in Dr. Andrade's office. (*Id.*). Defendant purportedly told Dr. Andrade that she had dismissed the charges on a technicality but that this "did not necessarily mean that . . . Plaintiff was not guilty." (*Id.*). Defendant denies having this conversation or any other conversation with Dr. Andrade regarding Plaintiff's morphine prescription. (Doc. 2 at 84, 95). Whether the conversation occurred or not, it is undisputed that Dr. Andrade refused to renew Plaintiff's prescription.

Following the meeting with Dr. Andrade, Plaintiff began filing grievances relating to the discontinuation of his morphine and he continued to seek aid from LCCF staff members. (Doc. 1-2 at 2; 25). The morphine prescription was renewed approximately six months after the meeting with Dr. Andrade. (*Id.* at 2). Plaintiff claims that being forced to go without morphine for six months caused him considerable pain and emotional distress. (*Id.*).

3

Plaintiff has asserted several claims against Lt. Buckelew based on the cancellation of his morphine prescription. (*Id.* at 3-6).[2] He agues that she caused Dr. Andrade to cancel his morphine prescription by informing him that she thought Plaintiff might have been improperly storing his morphine. In doing so, Plaintiff believes that Defendant violated his right to due process, his state constitutional rights, and his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* at 3-4). He further claims that Defendant conspired with Dr. Andrade to violate his constitutional rights. (*Id.* at 4). Plaintiff's claims are asserted against Defendant in both her official and individual capacities. (Doc. 2 at 110).

## II.     Standard of Review

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Affidavits or other evidence offered by the nonmoving party must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmoving party.

---

[2] Plaintiff has also asserted several claims against Dr. Andrade which are not implicated by Defendant Buckelew's motion for summary judgment. (Doc. 1-2 at 4-6).

Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Celotex,* 477 U.S. at 322)).

The Court liberally construes Plaintiff's filings because he is a *pro se* plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a *pro se* non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hospital,* 221F.3d 1160,1164 (10th Cir. 2000). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion.

### III.  Analysis

Defendant first argues that, despite citing to numerous constitutional provisions, Plaintiff implicates only the Eighth Amendment's prohibition against deliberate indifference to an inmate's serious medical needs. (Doc. 2 at 85-86). She contends that Plaintiff's claims against her in her official capacity are essentially claims against The GEO Group and that they should be dismissed. (*Id.* 87-88). She further argues that the individual capacity claims against her must be dismissed because she had no duty to provide medical care to Plaintiff and cannot be held responsible for any adverse medical decisions taken by Dr. Andrade. (Doc. 2 at 85-87). Finally, she argues that Plaintiff has not established the elements of a civil conspiracy claim under New Mexico law and that this claim must be dismissed. (*Id.* at 88-90).The Court will address these arguments in turn.

      **a.  Plaintiff's First, Fifth, and Fourteenth Amendment Claims Should be Dismissed**

As noted, Plaintiff claims that Defendant improperly convinced Dr. Andrade to cancel his morphine prescription and that this action violated Plaintiff's rights under the First Amendment, the Eighth Amendment, and his due process rights under the Fifth and Fourteenth Amendments. (Doc. 1-2 at 3-4). Defendant contends that there is no due process right to receive medical care in prison and that Plaintiff's complaint should be analyzed solely under federal Eighth Amendment jurisprudence. (Doc. 2 at 85-86). The Court concurs.

The Tenth Circuit has long held that, where a prisoner asserts that prison officials have been deliberately indifferent to an inmate's medical needs, the Court should review those claims under the Eighth Amendment, and not the due process clause. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (noting that, when a prisoner asserts claims under the Eighth and Fourteenth Amendment due to inadequate medical care, the Court should review the claims solely under the Eighth Amendment); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citations and quotations omitted).

Plaintiff alleges that Defendant convinced Dr. Andrade to cancel his morphine prescription and that this decision caused him unnecessary suffering. This claim implicates the Eighth Amendment's prohibition against cruel and unusual punishment in the provision of medical care to incarcerated prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to an inmate's serious medical needs constitutes the "unnecessary and wanton infliction of pain" and violates the Eighth Amendment). Because Plaintiff's

claims arise solely under the Eighth Amendment, the Court recommends that his claims under the First, Fifth, and Fourteenth Amendment be dismissed. The Court then turns to the question of whether Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### b. Plaintiff's Official Capacity Claims Should be Dismissed

Plaintiff has sued Defendant in her official capacity as a security guard at LCCF.[3] Defendant asserts that the official capacity claims against her are, in actuality, claims against GEO. (Doc. 2 at 87-88). She argues that the official capacity claims must be dismissed because Plaintiff cannot show that the GEO Group was responsible for the decision to discontinue Plaintiff's medications. (*Id.*). The Court concurs.

In *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978), the Supreme Court held that suing a defendant in his or her official capacity under 42 U.S.C. § 1983 is essentially another way of suing the county or municipality that employs them. *Monell*, 436 U.S. at 690. Although *Monell* dealt with counties and municipalities, the rule has been extended to private corporations acting under color of state law. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 543 US 61, 81 (2001) ("Under 42 U.S.C. § 1983, a state prisoner may sue a private prison for deprivation of constitutional rights"); *see also Smedley v. Corrections Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished). When seeking to hold a municipality or private corporation liable for the acts of its employee, a plaintiff must prove, i) that the municipal employee committed a constitutional violation, and

---

[3] Although the complaint does not specifically state whether he is suing Defendant in her individual or official capacity, his response to Defendant's motion makes clear that he is suing her in both capacities. (Doc. 2 at 110 ¶ 117).

ii) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty Bd. of Cnty Com'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694). For a custom or policy to be the "moving force" behind the constitutional violation, the plaintiff must show that the municipal action "was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 404 (1997).

In this case, Plaintiff has cited no custom or policy of GEO's which caused his medication to be discontinued. GEO does not even provide medical care to LCCF inmates; Lea County contracts with a separate corporation, Correctional Medical Services, to provide medical care to inmates. (*See, e.g.*, Doc. 1-2 at 16-17; Doc. 2 at 82, 92-95). The Court fails to see how some unidentified policy of GEO could be the moving force behind Dr. Andrade's decision to discontinue the morphine when Dr. Andrade is not a GEO employee.

In response, Plaintiff argues that "[i]t is certainly possible for an individual to violate someone's rights under color of state [law] without a "custom or policy being the driving force" behind the alleged violation." (Doc. 2 at 110). While this statement is true, it only establishes that a defendant may be liable for actions taken in his or her *individual* capacity. As previously noted, a claim against an official in her *official* capacity is actually a claim against the county or corporation employing the individual. *Myers* 151 F.3d, 1316. Such a claim may not be sustained unless the Plaintiff can identify a specific policy or custom of the employing organization which is the moving force behind the constitutional violation. *Id*. Because Plaintiff has not done so in this case, the Court recommends that his claims against Defendant in her official capacity be dismissed.

### c.       Plaintiff's Personal Capacity Claims Should be Dismissed

Defendant argues that Plaintiff's Eighth Amendment claims against her in her individual capacity should be dismissed because she was not responsible for providing medical care to LCCF inmates and because she never intentionally disregarded a substantial risk to Plaintiff's health. (Doc. 2 at 86-87). Plaintiff responds that Dr. Andrade reasonably relied on Defendant's statements when he decided to discontinue the morphine and that Defendant should therefore be held responsible for the pain he suffered over the next six months when he did not have access to morphine. (Doc. 2 at 107-108).

To succeed on an Eighth Amendment claim, Plaintiff must establish that Defendant acted with "deliberate indifference to [his] serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference standard encompasses both an objective and subjective test. The objective component of a deliberate indifference claim is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted). To prevail on the subjective component, Plaintiff must show "that the defendant knew he faced a substantial risk of harm and disregarded that risk . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal citations omitted). Mere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference.  *Estelle*, 429 U.S. at 105-06; *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.

1980). On the other hand, deliberate indifference may exist where officials prevent an inmate from receiving recommended treatment or deny an inmate access to medical personnel capable of evaluating the inmate for needed treatment. *Ramos*, 639 F.2d at 575 (citing *Inmates of Allegheny Cnty. Jail v. Pearce*, 612 F.2d 754, 762 (3d Cir. 1979); *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)).

Defendant's motion focuses solely on the subjective prong of the Eighth Amendment test. She claims that Plaintiff cannot show that she deliberately ignored a substantial risk to Plaintiff's health because she was not responsible for Plaintiff's medical care and was not even aware of Plaintiff's medical condition. (Doc. 2 at 87-88). In support of her motion, Defendant has attached an affidavit denying she ever had a conversation with Dr. Andrade regarding Plaintiff's prescription medications. (*Id*. at 95). Plaintiff retorts that a single, unsupported affidavit is insufficient to warrant a grant of summary judgment and that her affidavit should be disregarded by the Court. (Doc. 2 at 105-107).

The Court agrees with Plaintiff that Defendant's affidavit, standing alone, cannot be the basis for granting her motion for summary judgment. The two parties disagree whether Defendant ever spoke with Dr. Andrade about the results of Plaintiff's disciplinary hearing and this is precisely the type of "he said, she said" dispute which cannot easily be resolved at the summary judgment stage. *See, e.g.*, *Fincher v. Depository Trust and Cleaning Corp.*, 604 F.3d 712, 726 (2nd Cir. 2010) ("Whether Fincher and Hudson had a private conversation in which Hudson made the remarks that Fincher imputes to him is a question of "he said, she said," on which the court cannot . . . take a side at the summary judgment stage."). Nevertheless, even if the Court assumes that Defendant did speak to Dr. Andrade as alleged in Plaintiff's complaint, the Court finds that Defendant is still entitled to summary

judgment.

Defendant may only be held liable to Plaintiff if he can establish that she was aware of a substantial risk to Plaintiff's health and that she disregarded this risk when she spoke with Dr. Andrade about Plaintiff's disciplinary proceedings. *Martinez*, 563 F.3d at 1089. In this case, Defendant was not personally responsible for Plaintiff's medical care and had no authority to either continue or discontinue Plaintiff's morphine prescription. (Doc. 2 at 94-95). There is no evidence that Defendant was even aware of the nature of Plaintiff's medical condition or why he was being prescribed morphine. Even if Defendant told Dr. Andrade that she thought Plaintiff might be guilty despite dismissing the charges against him, the decision to discontinue the morphine was Dr. Andrade's alone. As such, Plaintiff has not shown that Defendant was personally responsible for the loss of his medications and his claims must fail. *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997). ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

Plaintiff argues that, even if Defendant had no contractual obligation to provide him with medical care, she nevertheless prevented him from receiving his morphine by telling Dr. Andrade that Plaintiff might have been guilty of the disciplinary violation. (Doc. 2 at 108-09). It is true that non-medical personnel can act with deliberate indifference if they prevent the prisoner from receiving necessary medical treatment. *Ramos*, 639 F.2d at 575. However, liability in those situations is usually premised on a prison guard refusing to dispense medication which has already been prescribed or where a guard refuses to let a sick inmate see a doctor or otherwise receive treatment. *Id.* (Holding that deliberate indifference can be shown when prison officials "prevent[ ] an inmate from receiving

recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment."); *see also Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005). In this case, Defendant did neither of these things. First, there is no suggestion that Defendant prevented Plaintiff from meeting with Dr. Andrade. More importantly, she did not refuse to provide him with prescribed medication or seek to prevent Dr. Andrade from providing medical care. She merely related to the doctor that, despite dismissing the disciplinary charges on procedural grounds, Plaintiff might have been improperly storing his morphine. At that point it was still Dr. Andrade's decision alone whether to cancel the morphine prescription or take any other action which he thought appropriate. The Court finds that Defendant did not prevent Plaintiff from receiving necessary medical treatment and the Court therefore recommends that Plaintiff's Eighth Amendment claims against Defendant in her personal capacity be dismissed.

### d.     **Plaintiff's Civil Conspiracy Case Should be Dismissed**

Plaintiff's complaint alleges that Defendant's conversation with Dr. Andrade amounts to a conspiracy between the two of them to violate Plaintiff's constitutional rights. (Doc. 1-2 at 4). Defendant argues that Plaintiff has not pled any facts which would establish the elements of a civil conspiracy claim and that this claim should be dismissed. (Doc. 2 at 88-90). Plaintiff's response merely states that, assuming his complaint establishes a violation of his due process rights, then "any action after that would constitute a conspiracy." (Doc. 2 at 111).

In New Mexico, there are three elements to a civil conspiracy charge: "i) that a conspiracy between two or more individuals existed; ii) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy, and iii) that the plaintiff was

damaged as a result of such acts." *Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. Ct. App. 2000). A civil conspiracy requires a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 587 P.2d 444, 447 (N.M. Ct. App. 1978).

In this case, the Court agrees that Plaintiff has not established the elements of a civil conspiracy under New Mexico law. First, Plaintiff has never alleged that Defendant or Dr. Andrade formed an agreement to wrongfully restrict his access to morphine. All Plaintiff has alleged is that Dr. Andrade called Defendant and she related her belief that might have been hoarding his medication. (Doc. 1-2 at 1-3). Even if Dr. Andrade relied on Defendant's statement when he refused to dispense any more morphine, that does not mean that Defendant entered into an agreement with Dr. Andrade for that specific purpose. The Court therefore recommends that Plaintiff's conspiracy claim be dismsised.

## IV. Conclusion

For the reasons outlined above, the Court finds that there are no disputed issues of material fact which would preclude the Court from entering judgment in Defendant's favor on all claims asserted against her. The Court therefore **RECOMMENDS** that *Defendant "Lieutenant Buckaloo's" Motion for Summary Judgment and Memorandum of Law in Support*, (Doc. 2 at 82-91), be **GRANTED** and that all claims against Defendant Buckelew be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE