IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNATHAN D. WISHNESKI,

        Plaintiff,

v.                                                                         No. 12-cv-00540-JCH-CG

DR. JOSE ANDRADE,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on *Defendant Dr. Andrade's Martinez Report* ("Martinez Report"), filed on January 4, 2013, (Doc. 44); *Plaintiff's Response to Martinez Report* ("Response"), filed on June 6, 2013, (Doc. 75); and *Defendant Dr. Andrade's Reply in Support of Martinez Report* ("Reply"), filed on June 20, 2013, (Doc. 76).  Also before the Court is *Defendant's Motion to Dismiss*, filed on April 18, 2013, (Doc. 63); *Plaintiff's Response to Defendant's Docs. #61 and 63 Defendant's Non-Compliance Motion and Motion to Dismiss*, filed on April 25, 2013, (Doc. 66); and *Defendant's Reply in Support of Motion to Dismiss*, filed on May 9, 2013, (Doc. 68).

    **I.**    **Background**

Plaintiff is an inmate who is incarcerated at Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico. (Doc. 1-2 at 1; Doc 44 at 1).  The New Mexico Corrections Department ("NMCD") contracts with Corizon, Inc. to provide medical care to inmates at LCCF.  (Doc. 44 at 1).  Defendant Jose Andrade is a licensed medical doctor;

from October 28, 2007 until at least December 31, 2011, he practiced medicine at LCCF.[1] (Ex. A at 1).  From January 26, 2010 until February 11, 2010, Plaintiff was admitted to the NMCD Mental Health Treatment Center for drug detoxification from Klonopin, an anti-anxiety drug.  (Ex. F at 217).  Upon his discharge from there, the staff recommended that Plaintiff avoid using addictive, mood-altering substances because of his history of chemical dependence.  (Ex. F at 217).

Plaintiff's complaint arises out of a decision by Defendant to discontinue Plaintiff's prescription for MS Contin[2] on two occasions during the relevant time period (from July 2010 until October 13, 2011, when Plaintiff filed his complaint in the Fifth Judicial District Court of the State of New Mexico).  (Doc. 1-2 at 1-3).  The events leading up to the first cancellation of Plaintiff's morphine prescription occurred on July 25, 2010, when Sgt. Mendoza conducted a "shakedown" of Plaintiff's cell. (*Id.* at 1, 12). While searching the cell, Sgt. Mendoza found two purple pills inside a clear plastic tube. (*Id.* at 1, 11-12). The pills were identified as morphine which had been prescribed to Plaintiff. (*Id.* at 11, 13). Plaintiff was prescribed morphine by Defendant to treat recurrent shoulder pain.  (Ex. F at 67-68).  Sgt. Mendoza suspected that Plaintiff was hoarding the morphine and charged him with Abuse of Medication, a major level offense. (Doc. 1-2 at 11).  A nurse left a note for Dr. Andrade, informing him that Plaintiff was hoarding his morphine. (*Id.* at 13). As a result, Dr. Andrade cancelled Plaintiff's morphine prescription, though medication

---

[1] Plaintiff disputes that Defendant Andrade's employment at LCCF ceased on December 11, 2011. (Doc. 75 at 7).  He contends that Defendant Andrade continued to work part-time at the facility for several months. (*Id.*). For purposes of Defendant's Motion for Summary Judgment, the Court will assume that Defendant Andrade continued to treat Plaintiff for part of 2012, to the extent that these dates are relevant to Plaintiff's claims.
[2] MS Contin is the brand name for morphine, a narcotic pain reliever.  *See* United States National Library of Medicine*, available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682133.html.

administration records reflect that Plaintiff received some morphine through August 17, 2010. (*Id.* at 1, 25; Ex. F at 344).

A disciplinary hearing regarding the incident was held, at which Lieutenant Brittni Buckelew[3] determined that the reporting officer had failed to submit a chain of custody form for the incriminating pills.  (Doc. 1-2 at 1, 10-11).  Lt. Buckelew dismissed the charges against Plaintiff based on this procedural error. (*Id.*).  On August 2, 2010, Plaintiff filed an informal complaint regarding the discontinuation of his morphine prescription.  (Doc. 33-14 at 1).  In response to this complaint, Health Services Administrator Don Douglas advised Plaintiff to bring verification that the charges had been dismissed to medical and it would be "given to provider at that time."  (*Id.*).  Plaintiff continued to appeal his grievance and was ultimately told that his medical "provider felt that [he] should be on different pain medication."  (Doc. 33-14 at 7).

On August 16, 2010, Defendant reminded Plaintiff that they had a verbal contract pursuant to which Defendant would discontinue Plaintiff's morphine prescription if he was found misusing the medication.  (Ex. F at 139).  Defendant's notes from that appointment demonstrate that Defendant knew Plaintiff's disciplinary charge had been dismissed on a technicality, but that a witness nurse had confirmed that the pills were morphine.  (Ex. F at 139).  At that appointment, Defendant prescribed Tramadol[4] for Plaintiff.  (Ex. F at 139).

---

[3] Plaintiff's Complaint also contained claims against Lt. Buckelew; these claims were dismissed by United States District Judge Judith C. Herrera on October 11, 2012.
[4] Tramdol is an opiate agonist used to relieve moderate to moderately severe pain and can be habit-forming. *See* United States National Library of Medicine, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html.

Plaintiff was also prescribed Meloxicam[5] and Nubain[6] from August until October 2010. (Ex. F at 332-346).

Plaintiff claims that he met with Dr. Andrade on September 1, 2010, and he provided proof that the charges had been dismissed. (Doc. 1-2 at 2). Plaintiff claims that, instead of reinstating the morphine prescription, Dr. Andrade called Defendant Buckelew while Plaintiff was still in Dr. Andrade's office. (*Id.*). Defendant purportedly told Dr. Andrade that she had dismissed the charges on a technicality but that this "did not necessarily mean that . . . Plaintiff was not guilty." (*Id.*). Medical records reflect that Plaintiff met with a medical provider on August 31, 2010, and complained that the prescribed Ultram was not working and that his shoulder was "killing" him.  (Ex. F at 138).

On October 18, 2010, Plaintiff was again prescribed morphine.  (Ex. F. at 135). Medication administration records from October 18, 2010 through May 2011 show that Plaintiff received morphine for the majority of that time.  (Ex. F at 304-331).  On April 5, 2011, notes from a follow-up appointment with the chronic disease clinic indicate that Plaintiff was found to be selling morphine.  (Ex. F at 60-61).  Plaintiff's prescription for morphine was discontinued on May 16, 2011.  (Ex. F at 28).  Plaintiff filed an informal complaint regarding the discontinuation of his morphine on May 18, 2011; in response to this grievance, Plaintiff was told that the medical provider "felt that [Plaintiff] should be on a different pain medication [because he was] found to be in violation of contract for pain management criteria."  (Doc. 33-14 at 8-15).

---

[5] Meloxicam is a nonsteroidal anti-inflamatory drug used to relieve pain, tenderness, swelling, and stiffness. *See* United States National Library of Medicine*, available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html.
[6] Nubain is used to relieve pain and is administered via an injection into the muscle.  *See* United States National Library of Medicine*, available at* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682668.html.

From May 2011 through December 2011, medication administration records show that Plaintiff received Meloxicam, Zostrix cream,[7] Naproxen,[8] Tylenol,[9] and Indocin[10] for his shoulder pain.  (Ex. F at 280-308).  Defendant ordered an x-ray of Plaintiff's shoulder in July 2011, and an MRI in September 2011.  (Ex. F at 27, 182).  Defendant recommended that Plaintiff see an orthopedic surgeon regarding his shoulder on four occasions: May 5, 2010; May 11, 2011; July 21, 2010; and September 26, 2011.  (Ex. F at 253, 262, 263, 265).  On each of these occasions, the regional medical director, Dr. Patrick Arnold, recommended an alternative treatment plan.  (*Id.*).  On January 17, 2012, Plaintiff received shoulder surgery. (Ex. F at 247).  Plaintiff removed the staples in his incision on February 2, 2012.  (Ex. F at 88).  At his follow-up appointment with the surgeon on April 11, 2012, Plaintiff acknowledged that his strength and range of motion had improved and he had less pain than before the surgery.  (Ex. F at 247).

Plaintiff alleges that Defendant violated Plaintiff's right to due process by discontinuing his prescription for morphine, and in fact conspired with Lt. Buckelew to do so.  (Doc. 1-2 at 4-5).  He also claims that Defendant was deliberately indifferent to Plaintiff's serious medical needs in violation of his constitutional rights.  Finally, Plaintiff asserts that Defendant intentionally inflicted needless pain, suffering, and emotional distress in violation of the laws of the State of New Mexico.  (Doc. 1-2 at 5-6).  Plaintiff's

---

[7] Zostrix xream is a topical pain medication used to relieve joint pain.  *See* United States National Library of Medicine*, available at http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=5a9e970c-7e67-469d-b9ad-010c031ed35b.*
[8] Naproxen is a nonsteroidal anti-inflamatory drug used to relieve pain.  *See* United States National Library of Medicine*, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html.*
[9] Tylenol is the brand name for acetaminophen, an analgesic used to relieve pain.  *See* United States National Library of Medicine*, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681004.html*
[10] Indocin is a nonsteroidal anti-inflamatory drug used to relieve moderate to severe pain.  *See* United States National Library of Medicine*, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681027.html.*

claims are asserted against Defendant in both his official and individual capacities.[11] (Doc. 75 at 20). In order to evaluate Plaintiff's claims against Defendant, the Court ordered a *Martinez* Report. (Doc. 36). Defendant filed a *Martinez* Report on January 4, 2013, and concurrently moved the Court for summary judgment. (Doc. 44 at 1).

## II.     Standard of Review

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* The movant bears the burden of making a prima facie demonstration that there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

If the moving party has demonstrated an absence of an issue of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249. The nonmovant must go

---

[11] Plaintiff's Complaint does not specify if he is bringing claims against Defendant in his official capacity, but his Response states, without elaborating, that he thought the issue was "well settled." (Doc. 75 at 20). Because the Court construed Plaintiff's Complaint as bringing claims against Lt. Buckelew in both her official and individual capacities based on his response to her Motion for Summary Judgment (Doc. 23 at 7), the Court infers that he also intended to bring claims against Defendant in both his individual and official capacities.

beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).

The purpose of a *Martinez* Report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992). A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See id. at* 1110. However, the Court should not be a *pro se* litigant's advocate. *Id.*

### III.   Analysis

Plaintiff has alleged violations of his Fifth, Eighth, and Fourteenth Amendment rights, as well as violations of state law and his state constitutional rights. (Doc. 1-2). Defendant argues that Plaintiff's constitutional claims implicate only the Eighth Amendment and as a matter of law, his Fifth and Fourteenth Amendment claims should be dismissed. (Doc. 44 at 12-13). Defendant also contends that Plaintiff has not provided evidence that a specific policy or custom was the moving force behind the alleged Eighth Amendment violations and, therefore, claims against Defendant in his official capacity must be dismissed. (*Id.* at 13-14). Regarding the alleged Eighth Amendment violations, Defendant asserts that the record does not support Plaintiff's claim that Defendant was deliberately

indifferent to Plaintiff's serious medical needs. (*Id.* at 14-18). Finally, Defendant argues that Plaintiff has not established the elements of a civil conspiracy claim under New Mexico law and that this claim must be dismissed. (*Id.* at 18-19).

### a.  *Plaintiff's Fifth and Fourteenth Amendment Claims*

Plaintiff claims that Defendant improperly discontinued his morphine prescription and that this action violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments.[12] (Doc. 1-2 at 3-4). Defendant contends that claims that concern a prisoner's medical needs should be should be analyzed under Eighth Amendment jurisprudence. (Doc. 44 at 12-13).

The Tenth Circuit has long held that, where a prisoner asserts that prison officials have been deliberately indifferent to an inmate's medical needs, the Court should review those claims under the Eighth Amendment, and not the due process clause. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (noting that, when a prisoner asserts claims under the Eighth and Fourteenth Amendment due to inadequate medical care, the Court should review the claims solely under the Eighth Amendment); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citations and quotations omitted).

---

[12] In his Response, Plaintiff asserts that because the medical care in prisons is frequently provided by corporations that have contracted with government, medical care is now a protected liberty interest that cannot be withheld without due process. (Doc. 75 at 14-20). Plaintiff's argument conflates several issues, including whether the corporations running prisons and the medical facilities within prisons are state actors entitled to qualified immunity; whether seminal Supreme Court cases such as *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), should apply to these private corporations; and the difference between the protections under the Eighth and Fourteenth Amendments. (Doc. 75 at 14-20). Plaintiff does not provide any legal authority to support his arguments and has generally misunderstood many of the legal principles at issue. Thus, the Court does not address these arguments in detail, but has reviewed them and finds that they do not have any legal support.

Plaintiff alleges that Defendant canceled his morphine prescription as punishment for the July 2010 discovery of two pills in his cell. (Doc. 75 at 9-22). He further argues that this "punishment" is a violation of his due process rights because he was found not guilty at the disciplinary hearing on the incident. (*Id.*). However, Plaintiff's framing of the issue is incorrect because Defendant's actions involve Plaintiff's medical care and are unrelated to any parallel disciplinary process that occurred. Thus, this claim implicates the Eighth Amendment's prohibition against cruel and unusual punishment in the provision of medical care to incarcerated prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to an inmate's serious medical needs constitutes the "unnecessary and wanton infliction of pain" and violates the Eighth Amendment). Because Plaintiff's claims arise solely under the Eighth Amendment, the Court recommends that his claims under the Fifth and Fourteenth Amendment be dismissed.

    b.    *Plaintiff's Eighth Amendment Claims Against Defendant in his Official Capacity*

Plaintiff has sued Defendant in his official capacity as a medical provider at LCCF. Defendant asserts that Plaintiff has not alleged a custom or policy that resulted in the deprivation of his constitutional rights. (Doc. 44 at 14). In his Response, Plaintiff argues that Defendant violated NMCD Policy 150600: Allegations From Inmates Against Corrections Department Staff or Other Inmates. (Doc. 75 at 11; Doc. 1-2 at 14-15). Plaintiff also asserts that the moving force behind the alleged constitutional violation is the "policy or custom . . . that Dr. Andrade was allowed to administer punishment as he saw fit." (Doc. 75 at 20).

In *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978), the Supreme Court held that suing a defendant in his or her official capacity under 42 U.S.C. § 1983 is

9

essentially another way of suing the county or municipality that employs them. *Monell*, 436 U.S. at 690. Although *Monell* dealt with counties and municipalities, the rule has been extended to private corporations acting under color of state law. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 543 US 61, 81 (2001) ("Under 42 U.S.C. § 1983, a state prisoner may sue a private prison for deprivation of constitutional rights"); *see also Smedley v. Corrections Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished). When seeking to hold a municipality or private corporation liable for the acts of its employee, a plaintiff must prove, i) that the municipal employee committed a constitutional violation, and ii) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty Bd. of Cnty Com'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694). For a custom or policy to be the "moving force" behind the constitutional violation, the plaintiff must show that the municipal action "was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty Com'rs v. Brown*, 520 U.S. 397, 404 (1997).

In this case, Plaintiff argues that Defendant violated NMCD policy regarding allegations from other inmates when Defendant discontinued his morphine prescription after other inmates reported that Plaintiff was selling the pills. (Doc. 75 at 11). Under the NMCD policy, inmates must provide a sworn statement under penalty of perjury when making allegations against other inmates or staff. (Doc. 1-2 at 14-15). The stated purpose of the policy is to make inmates accountable for their conduct and statements; the policy does not outline any guidelines that staff must follow when considering the content of an inmate's statement. Therefore, Defendant has not violated this policy because it does not

apply to him.  Moreover, a violation of a policy that applied to Defendant would not support the conclusion that the policy itself was a "moving force behind the constitutional violation." *See Myers* at 151 F. 3d at 1316.  Such an argument would only support a claim against Defendant in his individual capacity.

Although Plaintiff asserts that based on "custom," Defendant was allowed to administer punishment as he saw fit, he does not provide any factual support for his argument.  As addressed above, Defendant provided medical care for Plaintiff and was not involved in any disciplinary action that "punished" Plaintiff.  The Court will construe Plaintiff's argument very liberally and assume he is actually alleging that, as per custom, Defendant is allowed to provide medical care in any manner that he chooses.  However, the record demonstrates that Defendant's actions were reviewed through the grievance process and by the regional medical director, Dr. Arnold.  (See Doc. 33-14; Ex. F at 253, 262, 263, 265).  Plaintiff's broad, conclusory statement that there exists a NMCD custom that allows Defendant to do anything he wants is not supported by any evidence.  Thus, the Court recommends that Plaintiff's claims against Defendant in his official capacity be dismissed.

    c.    *Plaintiff's Eighth Amendment Claims Against Defendant in his Individual Capacity*

Plaintiff argues that Defendant violated his Eighth Amendment rights by discontinuing his morphine on two occasions.  (Doc. 1-2).  Defendant argues that he was not deliberately indifferent to Plaintiff's medical needs and provided appropriate medical treatment.  (Doc. 44 at 14-18).

The Eighth Amendment is implicated when a prison official is deliberately indifferent to a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A

11

prison official violates the Eighth Amendment when (1) objectively, the deprivation alleged is sufficiently serious; and (2) the official has "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotations omitted).

In determining whether conditions of confinement violate the Eighth Amendment and therefore satisfy the objective element that the alleged deprivation is sufficiently serious, the Court is required to consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted).

To prevail on the subjective component, a plaintiff must show "that the defendants knew he faced a substantial risk of harm and disregarded that risk . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal citations omitted). Mere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference. *Estelle*, 429 U.S. at 105-06; *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Moreover, a "prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir.1999). A prisoner cannot show deliberate indifference by arguing that prison doctors were pursuing a course of treatment which the Plaintiff felt was

ineffective or even negligent. *See, e.g.*, *Taylor v. Ortiz*, 410 Fed. App'x 76 (10th Cir. 2010) (unpublished) (no constitutional violation when doctors chose not to provide plaintiff with a more advanced "combination treatment" for hepatitis C which would have protected plaintiff from liver cirrhosis or cancer); *Johnson v. Standifird*, 400 Fed. App'x 369, 371 (10th Cir. 2010) (unpublished) (no constitutional violation where orthopedist recommended against surgery to treat degenerative disease in plaintiff's knee and hip until the condition "severely affected the quality of his life.").

Plaintiff's Complaint implicates the subjective prong of the Eighth Amendment test, as the objective prong is satisfied because Plaintiff's shoulder pain was sufficiently serious that Defendant was treating it. Plaintiff's morphine prescription was discontinued twice, once in August 2010 for approximately two months, and again in May 2011 until his Complaint was filed in October 2011. However, during the time that Plaintiff did not receive morphine, he was prescribed various painkillers, including Tramadol, Meloxicam, Nubain, Naproxen, Tylenol, Indocin, and Zostrix cream. Plaintiff complains that these medications were not as effective at treating his pain as morphine. However, a prisoner who disagrees with a prescribed course of treatment does not state a constitutional violation. *See Perkins*, 165 F. 3d at 811. The fact that Defendant prescribed a variety of painkillers to treat Plaintiff's shoulder pain undermines the argument that he was deliberately indifferent to Plaintiff's medical needs.

The record supports an inference that Defendant was concerned that Plaintiff, an individual with a history of substance abuse, was misusing his prescription for morphine, a narcotic, addictive substance. While Plaintiff vehemently denies any misuse of his medication, the decision to continue the prescription remains within Defendant's medical

13

discretion, even if the reports of misuse were not substantiated to the extent Plaintiff believes they should have been. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (physicians are free to exercise their medical judgment as to the appropriate treatment for a patient). Additionally, Defendant recommended on several occasions that Plaintiff see an orthopedic surgeon regarding his shoulder pain, but the regional medical director denied these requests. The record does not support Plaintiff's claim that Defendant was deliberately indifferent to Plaintiff's pain.

Plaintiff also asserts that the discontinuation of his prescription for morphine is the reason he was "forced into a surgery" for his shoulder. (Doc. 75 at 6). This argument is attenuated at best, considering that Plaintiff was receiving pain medication up until his shoulder surgery. Additionally, the medical records show that Plaintiff's strength and range of motion had improved after the surgery and he experienced less pain. To the extent Plaintiff's allegation that Defendant's actions "forced" Plaintiff to have a remedial surgery for his ongoing shoulder pain could be supported, Plaintiff has failed to show that he suffered substantial harm.

Plaintiff also argues that he was forced to remove the staples in his surgical incision himself while under Defendant's part-time care, allegedly because he was being denied a follow-up visit with the surgeon. (Doc. 75 at 13). However, the staple-removing incident is outside the scope of Plaintiff's Complaint, which addresses only Defendant's discontinuation of Plaintiff's morphine prescription.

The record demonstrates that Plaintiff's claims amount to a disagreement with a prescribed course of treatment and not a constitutional violation. Therefore, the Court

recommends that Plaintiff's Eighth Amendment claims against Defendant in his individual capacity be dismissed.

>    d.   Plaintiff's Civil Conspiracy Case Should be Dismissed

Plaintiff's complaint alleges that Defendant's conversation with Lt. Buckelew amounts to a conspiracy between the two of them to violate Plaintiff's constitutional rights. (Doc. 1-2 at 4). Defendant argues that Plaintiff has not pled any facts which would establish the elements of a civil conspiracy claim and that this claim should be dismissed. (Doc. 44 at 18-19). Plaintiff's response merely states that he will "go to his grave knowing that Lt. Buckelew and Defendant Andrade did in fact conspire" to deny him his due process rights, as he alleged in his Complaint. (Doc. 75 at 21-22).

In New Mexico, there are three elements to a civil conspiracy charge: "i) that a conspiracy between two or more individuals existed; ii) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy, and iii) that the plaintiff was damaged as a result of such acts." *Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. Ct. App. 2000). A civil conspiracy requires a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 587 P.2d 444, 447 (N.M. Ct. App. 1978).

In this case, Plaintiff has never alleged that Defendant or Lt. Buckelew formed an agreement to wrongfully restrict his access to morphine. Plaintiff has only alleged that Defendant called Lt. Buckelew and she related her belief that Plaintiff might have been hoarding his medication. (Doc. 1-2 at 1-3). Even if Defendant relied on Lt. Buckelew's statement when he refused to prescribe any more morphine, that does not mean that

Defendant entered into an agreement with Lt. Buckelew for that specific purpose. The Court therefore recommends that Plaintiff's conspiracy claim be dismissed.

### IV. Plaintiff's State Tort Claims

Because the Court recommends that all of Plaintiff's federal law claims should be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right. . . Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well")

### V. Motion to Dismiss

On April 18, 2013, Defendant filed his *Motion to Dismiss*. (Doc. 63). In his Motion to Dismiss, Defendant requests that the Court dismiss Plaintiff's Complaint because Plaintiff failed to comply with the Court's order to provide Defendant with executed medical authorizations. (Doc. 63 at 1-3). However, Defendant also stated that he filed a complete *Martinez* Report that would allow the Court to "develop a record sufficient to ascertain whether there are any factual or legal bases" for Plaintiff's claims. (Doc. 62 at 2) (citing *Hall*, 935 F.2d at 1109). Because the Court addressed the merits of Plaintiff's Complaint using the evidence submitted with the *Martinez* Report, the Court recommends that Defendant's Motion to Dismiss be denied as moot.

### VI. Conclusion

For the reasons outlined above, the Court finds that there are no disputed issues of material fact which would preclude the Court from entering judgment in Defendant's favor on all claims asserted against him. The Court **RECOMMENDS** that *Defendant Dr.*

*Andrade's Martinez Report and Motion for Summary Judgment*, (Doc. 44), be **GRANTED** and that all claims against Defendant Jose Andrade be **DISMISSED WITH PREJUDICE**.

The Court further **RECOMMENDS** that Defendant's Motion to Dismiss, (Doc. 63), be **DENIED AS MOOT**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE